[No. 33295.   Department Two.   September 8, 1955.]

JOHN B. CROWLEY *et al., Respondents,* v. ROBERT H. MILLS
*et al., Appellants.*[1]

*Cornelius & Cornelius, Thomas Malott,* and *Sidney Schulein,* for appellants.

*Thos. A. E. Lally,* for respondents.

HILL, J.—This is an appeal by the defendants from a judgment for $2,435.50 in favor of the plaintiffs in an action for unjust enrichment.  The issues involved are purely factual.  The respondents seek to uphold the judgment in this court on the basis of our oft-repeated holding that the trial court's findings made on conflicting evidence will not be disturbed on appeal.

Our examination of the record fails to disclose any really conflicting evidence on the essential details of the transaction involved in this case.  If we were to believe all the evidence offered on behalf of the respondents on the essential elements of the transaction, and to disbelieve all the testimony offered on behalf of the appellants except such as is corroborated by documentary evidence of undisputed authenticity and by the overwhelming probabilities, we could

[1]Reported in 287 P. (2d) 491.

not find that an unjust enrichment by the appellants at the expense of the respondents is established.

Since we are reversing the trial court on issues of fact, a resume of what the evidence establishes is necessary.

Curtis Kenney had purchased from Inland Truck & Diesel Company (hereinafter referred to as Inland Diesel) two tractors, a Cletrac and an Allis-Chalmers, with four other specifically described pieces of equipment to be used with the tractors in his logging operations. On August 12, 1948, he gave a chattel mortgage and note for $9,450.36 payable $795.03 a month, covering all the equipment, to the Spokane & Eastern Branch, Seattle-First National Bank. The mortgage was guaranteed by Inland Diesel. On October 7, 1948, he gave a second mortgage on the same equipment, plus a Willys jeep, to R. H. Crowley, who was the managing partner of the Chewelah Lumber Company, a partnership in which he had a half interest and his brother and sister, John Crowley and Jane Crowley, each had a quarter interest. This mortgage was for $12,745.35, payable on demand.

Kenney defaulted in his payments to the bank, and Inland Diesel, in consequence of its guarantee of the mortgage, paid the bank the amount then due, i.e., $7,018.77, and became the owner of the chattel mortgage and note given to the bank. Inland Diesel thereupon threatened to foreclose.

The partnership, having taken a bill of sale dated February 24, 1949, from Kenney, covering all the equipment included in the mortgage to the bank, desired to refinance and prevent foreclosure and inquired through R. H. Crowley as to what it would cost to pay off Inland Diesel. He was told it would total $7,650.67, which included other expenses and an attorney's fee of $150 for Inland Diesel's attorney. Robert H. Mills, hereinafter referred to as though he were the only appellant, advanced this amount for the partnership in two checks, one for $7,500.67 to Inland Diesel and one for $150 to that company's attorney. It was testified that appellant also paid $161 for repairs on the Cletrac tractor. These three items ($7,500.67, evidenced by a check to Inland Diesel; $150, evidenced by a check to Sam Edelstein,

Inland Diesel's attorney; and $161 for repairs, evidenced by testimony of appellant and Frank Rowe, who made the repairs, together with a credit of $161 entered on a note of Rowe's to appellant) made a total of $7,811.67 advanced by appellant for the partnership at the time of the execution of the mortgage which is the critical instrument in this controversy.

It is undisputed that on March 10, 1949, a chattel mortgage covering the equipment was executed by R. H. Crowley in behalf of the partnership (and his authority to do so is not questioned), with the appellant as mortgagee, and that the partnership therein agreed to pay appellant $8,280 in twelve monthly payments of $690 each. The only mention of interest in the mortgage is that the amounts due and unpaid were to bear interest at the rate of twelve per cent per annum from the due date.

Appellant testified that the difference ($468.33) between the $7,811.67 which he advanced for the partnership and the amount of the mortgage ($8,280) was interest on the $7,-811.67 advanced, computed at six per cent for one year. (The interest at that rate and for that term would be $468.70. The difference of thirty-seven cents was waived to make the mortgage in an even amount.)

R. H. Crowley died before most of the payments had been made on the mortgage, and his brother, John B. Crowley, became the manager of the partnership. Payments were allowed to become delinquent, but the partnership ultimately paid off the mortgage, making payments totaling $9,322.98. John Crowley based his payments on information furnished him by appellant. Appellant's version is that this amount was credited as follows:

| | |
|---|---|
| Mortgage principal | $8,280.00 |
| Interest on delinquent payments | 743.74 |
|    (This should be $725.74; error due to a | |
|    transposition of figures) | |
| Open account charges (hereinafter discussed) | 296.24 |
| Filing and recording mortgage satisfactions | 3.00 |
| Total | $9,322.98 |

The surviving members of the partnership, John B. Crowley and Jane M. Crowley, together with Mary Ellen Crowley as executrix and trustee of the will of Raymond H. Crowley, deceased, through the diligence of counsel, learned that the bank had been paid only $7,018.77 when it indorsed the mortgage and note to Inland Diesel. (The respondents alleged and the trial court found that appellant made this payment on behalf of the partnership, but there is a complete lack of evidence to support that allegation and finding.) The respondents, conceiving that they had been overcharged in the computation of interest and that they were not properly chargeable with the open account items, brought an action for unjust enrichment in the amount of $2,892.74.

We shall not follow the method of computation by which the respondents arrived at that figure, except to say that it begins with the unproved assumption that appellant agreed to loan the partnership $8,280 without interest except upon delinquent payments, and consequently the difference between $8,280 and $7,147.77 (which includes an item of $129 that they concede appellant paid and which appellant claims was included in the amount he paid Inland Diesel), or $1,-132.23, was available to the partnership and should have been used to make the monthly payments of $690 as they became due until it was exhausted, thus paying the principal in that amount and eliminating interest charges which appellant recorded as delinquent. Even so, we are unable to comprehend how, under any conceivable theory, the claimed unjust enrichment could exceed the difference between the amount the respondents actually paid the appellant and the amount they concede he advanced in their behalf. Appellant describes the respondents' theory in this way:

"I agree to lend you $4.00 but I only give you $3.00. Therefore, I still owe you $1.00. Credit that $1.00 against the $3.00 you do owe me, and you only owe me $2.00."

However, the trial court accepted the respondents' figure of $2,892.74, but reduced it by $457.24 and entered judgment for $2,435.50.

The amount of $457.24 by which the trial court reduced the respondents' computations is made up of the $161 payment to Rowe for repairs on the Cletrac tractor (which was part of the $7,811.67 advanced before the mortgage) and the $296.24 open account charges in connection with the sale of the tractors and their care while under appellant's control, the major portion of which was a five per cent commission on the sale of the Cletrac tractor for $4,675.

The propriety of these charges by the appellant against the partnership could be said to depend upon the credibility of the witnesses, and could have been decided either way. The trial court, in its oral decision, stated that the items making up that amount had been established by competent evidence and would have to be allowed.

The mortgage evidences only that *the partnership agreed to pay the appellant $8,280.* The respondents' theory that *the appellant agreed to loan the partnership $8,280* is without any support in the evidence.

To support the respondents' theory, it would be necessary to find that the appellant agreed to loan the partnership $8,280 with no interest whatsoever except on payments not made at maturity. In our opinion, the probabilities are so overwhelmingly against an agreement by appellant, who was not conducting an eleemosynary institution but was in the business of loaning money, to advance $8,280 without interest, and the circumstances are so consistent with the theory that interest in the amount of $468.33 was added to the $7,811.67 advanced by appellant to make the amount of the mortgage $8,280, that we must conclude that the trial court erred not only in finding that appellant agreed to loan the partnership $8,280 without interest but in refusing to find that appellant had paid out, in behalf of the partnership, all of the three items that we have indicated total $7,811.67 and was to receive an additional $468.33 as interest.

We have already enumerated the items which appellant claims were covered by the $9,322.98 paid by the partnership to him. We have discussed the evidence relative to the $8,-

280 mortgage and have concluded that the partnership was obligated to pay in accordance with the terms of that mortgage. An accountant testified that there was an overcharge of eighteen dollars in the interest charges of $743.74 on delinquent payments on that mortgage. The open account items of $296.24 were expressly approved by the trial court as part of the $457.24 by which it reduced the amount sought by the respondents. The three dollars for filing the releases of the mortgages to the bank and to R. H. Crowley seems not to be questioned. It follows that the appellant received from the partnership only the amount he had advanced in its behalf and the interest due thereon, except for the overcharge of eighteen dollars, which was an accounting error of transposition of figures and not in any sense an unjust enrichment.

We have taken no time or space to explain the difference between the $7,500.67 which the appellant paid Inland Diesel and the $7,018.77 which Inland Diesel paid the bank for the mortgage and note. In our judgment, a satisfactory explanation was made (and appellant concedes an item of $129 for which Inland Diesel had filed a notice of chattel lien against one of the tractors), but if any part of that difference or of the $150 paid to Inland Diesel's attorney constituted an unjust enrichment, it certainly was not an unjust enrichment of appellant, who established that he paid $7,650.67 to Inland Diesel and its attorney.

Judgment reversed, with instructions to enter a judgment dismissing the complaint of the respondents.

HAMLEY, C. J., MALLERY, WEAVER, and ROSELLINI, JJ., concur.